**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OREGON RESTAURANT AND
LODGING ASSOCIATION, a non-profit
Oregon corporation; WASHINGTON
RESTAURANT ASSOCIATION, a non-
profit Washington corporation;
ALASKA CABARET, HOTEL,
RESTAURANT & RETAILERS
ASSOCIATION, a non-profit Alaska
corporation; NATIONAL
RESTAURANT ASSOCIATION, a non-
profit Illinois corporation; DAVIS
STREET TAVERN LLC, an Oregon
limited liability company; SUSAN
PONTON, an individual,
               *Plaintiffs-Appellees*,

                    v.

THOMAS PEREZ, in his official
capacity as Secretary of the U.S.
Department of Labor; LAURA
FORTMAN, in her official capacity as
Deputy Administrator of the U.S.
Department of Labor; U.S.
DEPARTMENT OF LABOR,
               *Defendants-Appellants*.

No. 13-35765

D.C. No.
3:12-cv-01261-
MO

2    OREGON REST. & LODGING ASS'N V. PEREZ

| | |
|---|---|
| JOSEPH CESARZ; QUY NGOC TANG, individually and on behalf of all others similarly situated, and all persons whose names are set forth in Exhibit A to the First Amended Complaint, | No. 14-15243 |
| | D.C. No. 2:13-cv-00109-RCJ-CWH |
| *Plaintiffs-Appellants*, | |
| v. | ORDER |
| WYNN LAS VEGAS, LLC; ANDREW PASCAL; STEVE WYNN, | |
| *Defendants-Appellees.* | |

Filed September 6, 2016

Before: Harry Pregerson, N. Randy Smith,
and John B. Owens, Circuit Judges.

Order;
Dissent by Judge O'Scannlain

# SUMMARY[*]

**Fair Labor Standards Act**

The panel denied a petition for panel for rehearing, and denied on behalf of the court a petition for rehearing en banc.

In its opinion, filed February 23, 2016, the panel majority reversed the district courts' decisions in favor of employers, and held that *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010), did not foreclose the Department of Labor's ability to promulgate subsequently a formal rule that extended the tip pooling restrictions of Section 203(m) of the Fair Labor Standards Act of 1938; and remanded for further proceedings.

Judge O'Scannlain, joined by Judges Kozinski, Gould, Tallman, Bybee, Callahan, Bea, M. Smith, Ikuta and N.R. Smith, dissented from the denial of rehearing en banc because the panel's opinion rejected court precedents, and opened two circuit splits.

# COUNSEL

John S. Koppel (argued) and Michael Jay Singer, Attorneys, United States Department of Justice, Civil Division, Washington, D.C.; Stuart F. Delery, Assistant Attorney General, Office of the Attorney General, Washington, D.C.; S. Amanda Marshall, United States Attorney, United States

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

4        OREGON REST. & LODGING ASS'N V. PEREZ

Attorneys' Office, Oregon, for Defendants-Appellants
Thomas Perez, et al.

Joshua D. Buck (argued), Thierman Buck, Reno, Nevada;
Leon Greenberg and Dana Sniegocki, Leon Greenberg
Professional Corporation, Las Vegas, Nevada, for Plaintiffs-
Appellants Joseph Cesarz and Quy Ngoc Tang.

Paul DeCamp (argued), Jackson Lewis P.C., Reston,
Virginia; Nicholas M. Beerman, Peter H. Nohle, and William
Robert Donovan, Jr., Jackson Lewis P.C., Seattle,
Washington; Scott Oberg Oborn, Jackson Lewis P.C.,
Portland, Oregon, for Plaintiffs-Appellees Oregon Restaurant
and Lodging Association, et al.

Eugene Scalia (argued) and Alexander Cox, Gibson Dunn &
Crutcher LLP, Washington, D.C.; Gregory J. Kamer and
Brian J. Cohen, Kamer Zucker Abbott, Las Vegas, Nevada,
for Defendants-Appellees Wynn Las Vegas, LLC, et al.

**ORDER**

Judges Pregerson and Owens have voted to deny the
petition for panel rehearing.  Judge Owens has voted to deny
the petition for rehearing en banc, and Judge Pregerson has so
recommended.  Judge N.R. Smith has voted to grant the
petition for panel rehearing and petition for rehearing en
banc.

The full court was advised of the petition for rehearing en
banc.  A judge requested a vote on whether to rehear the
matter en banc.  The matter failed to receive a majority of

votes of the nonrecused active judges in favor of en banc consideration.  Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are **DENIED**.

The order filed on April 1, 2016 denying rehearing in *Cesarz v. Wynn Las Vegas* is hereby amended to reflect this subsequent en banc activity, including the dissent from denial of rehearing.

---

O'SCANNLAIN, Circuit Judge, with whom KOZINSKI, GOULD, TALLMAN, BYBEE, CALLAHAN, BEA, M. SMITH, IKUTA, N.R. SMITH, Circuit Judges, join, dissenting from the denial of rehearing en banc:

Our court today rejects the most elemental teaching of administrative law: agencies exercise whatever powers they possess because—and only because—such powers have been delegated to them by Congress.  Flouting that first principle, the panel majority equates a statute's "silence" with an agency's invitation to regulate, thereby reaching the startling conclusion that the Department of Labor can prohibit any workplace practice Congress has not "unambiguously and categorically protected" through positive law.  The dissenting opinion had it right; the panel majority's extravagant theory is more than the Constitution will bear.  And it is more than our own precedents will allow.  Because the panel majority reads our precedents out of existence, and opens not one, but two circuit splits in the process, I respectfully dissent from our refusal to rehear these consolidated cases en banc.

# I

## A

Here is a brief overview of the statutory and regulatory landscape. The Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, sets a minimum wage employers must pay their employees, *id.* § 206(a). Employers who have "tipped employee[s]" can meet the minimum-wage requirement in either of two ways. *Id.* § 203(m). First, they can simply pay such employees a cash wage at or above the minimum. *Id.* Second, they can pay a cash wage below the minimum, but only if such employees receive enough money in tips to make up the difference. *Id.* Employers who choose the second option are said to take a "tip credit." In addition, for many decades it has been common practice for employers across service industries to require the people who work for them to share tips with one another, a practice known as "tip pooling." But not all employees are alike. Some, like restaurant servers,[1] are "customarily and regularly tipped," *id.*; others, like the kitchen staff, are not. Section 203(m) says that *if* an employer takes a tip credit to satisfy its federal minimum-wage obligations, it is not allowed to institute a tip pool comprising *both* categories of employees. *Id.* So, if a restaurant takes a tip credit, it cannot require its servers to share their tips with the kitchen staff (but it can require the servers to share tips with their fellow servers).

Although § 203(m) speaks directly about the tip-pooling practices of employers who take advantage of the tip credit, it says absolutely nothing about tip pooling by employers

---

[1] We use the term "server" to include the waiters and waitresses serving tables.

who do *not* take a tip credit.  In *Cumbie v. Woodie Woo, Inc.*, 596 F.3d 577, 578 (9th Cir. 2010), we addressed "whether a restaurant violates the Fair Labor Standards Act, when, despite paying a cash wage greater than the minimum wage, it requires its wait staff to participate in a 'tip pool' that redistributes some of their tips to the kitchen staff."  We held it does not; instead, the statute's carefully calibrated scope evidenced Congress's clear intent to leave employers who do not take a tip credit free to arrange their tip-pooling affairs however they and their employees see fit.  *Id.* at 580–83.  So, if a restaurant guarantees its employees the federal minimum wage, the restaurant *can* (so far as federal labor law is concerned) force its servers to share their tips with the bussers, cooks, and dishwashers.  Section 203(m) does not apply here—it is simply indifferent to the fate of the servers' tips.

Two background principles informed *Cumbie*'s construction of the statute.  First, it has been settled law for three-quarters of a century that "[i]n businesses where tipping is customary, the tips, in the absence of an explicit contrary understanding, belong to the recipient. Where, however, such an arrangement is made, in the absence of statutory interference, no reason is perceived for its invalidity."  *Id.* at 579 (quoting *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 397 (1942)) (alterations omitted) (emphasis deleted). "*Williams* establishes the default rule that an arrangement to turn over or to redistribute tips is presumptively valid."  *Id.* at 583.  Second, the "Supreme Court has made it clear that an employment practice does not violate the FLSA unless the FLSA *prohibits* it."  *Id.* (citing *Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000) ("Unless the FLSA *prohibits* respondents from adopting its policy, petitioners cannot show that Harris County has violated the FLSA.")).

After examining the statute's text and structure, *id.* at 580–81, we determined that the "plain text" of § 203(m) only "imposes *conditions* on taking a tip credit and does not state freestanding *requirements* pertaining to all tipped employees," *id.* at 581. As a result, we concluded that the "FLSA does not restrict tip pooling when no tip credit is taken." *Id.* at 582. "Since Woo [the employer] did not take a tip credit, we perceive[d] no basis for concluding that Woo's tippooling arrangement violated section 203(m)." *Id.* "Having concluded that nothing in the text of the FLSA purports to restrict employee tip-pooling arrangements when no tip credit is taken, we perceive[d] no statutory impediment to Woo's" tip-pooling practice. *Id.* at 583.

B

We decided *Cumbie* in 2010. Unhappy with our decision, in 2011 the Department of Labor issued new regulations addressing the very same issue. *See* Updating Regulations Issued Under the Fair Labor Standards Act, 76 Fed. Reg. 18,832 (Apr. 5, 2011). The preamble to those regulations confessed that *Cumbie* advanced a "'plain meaning' construction," *id.* at 18,842, but nevertheless voiced the Department's opinion that *Cumbie* was wrongly decided, *id.* at 18,841–42. The Department then announced that, statutory text and *Cumbie* notwithstanding, henceforth "tips are the property of the employee, and . . . section [203(m)] sets forth the only permitted uses of an employee's tips—either through a tip credit or a valid tip pool—whether or not the employer has elected the tip credit." *Id.* at 18,842 (By "valid" tip pool, the Department apparently means a tip pool consisting exclusively of employees who are "customarily and regularly tipped.") The Department replaced this language:

> In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer.

with the following:

> Tips are the property of the employee whether or not the employer has taken a tip credit under section [203(m)] of the FLSA. The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section [203(m)]: As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.

*Compare* 32 Fed. Reg. 13,575, 13,580 (1967), *with* 29 C.F.R. § 531.52.

This new regulation thus flips *Williams* and *Christensen* on their heads. It takes the longstanding rule that federal law permits employers to institute any tip-pooling arrangement the FLSA does not prohibit, and turns it into a rule that employers may only institute a tip pool if the FLSA expressly authorizes it.

## II

The facts of these consolidated cases are straightforward and undisputed. The Appellees are employers who pay all of their employees at or above the minimum wage. *Or. Rest. &*

*Lodging Ass'n v. Perez*, 816 F.3d 1080, 1082 (9th Cir. 2016). That is, none of them takes a tip credit. In addition, the employers have opted to institute tip pools comprised of both customarily tipped employees and non-customarily tipped employees. Specifically, Wynn Las Vegas requires its casino dealers to share a portion of their tips with casino floor supervisors, while the employers represented by the Oregon Restaurant and Lodging Association require their servers to share a portion of their tips with the kitchen staff. *Id.* at 1085. The question for us is whether such tip pools are prohibited by § 203(m).

So far, so *Cumbie*. The facts are the same. The statute is the same. But this time the panel holds that the tip-pooling arrangements just described are illegal. The only difference is that here we have a Department of Labor regulation declaring that it simply will not follow what *Cumbie* said was permitted. The problem for the Department is that the Supreme Court has prohibited an agency in its position from doing exactly that. That is, "a court's interpretation of a statute trumps an agency's . . . if the prior court holding 'determined a statute's clear meaning.'" *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005) (emphasis deleted) (quoting *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 131 (1990)).

That is precisely what we did in *Cumbie*: we held that § 203(m) is clear and unambiguous—and that it clearly and unambiguously permits employers who forgo a tip credit to arrange their tip-pooling affairs however they see fit. We said this explicitly no fewer than six times. *Cumbie*, 596 F.3d at 579 n.6 ("[W]e conclude that the meaning of the FLSA's tip credit provision is clear . . . ."); *id.* at 581 ("[W]e cannot reconcile [Cumbie's] interpretation with the plain text of [the

statute] . . . ."); *id.* at 581 n.11 ("[W]e do not resort to legislative history to cloud a statutory text that is clear." (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994))); *id.* at 582 (describing Cumbie's reading of § 203(m) as "plainly erroneous"); *id.* at 582 (refusing to "depart[] from the plain language of the statute" (quoting *Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs*, 519 U.S. 248, 261 (1997))); *id.* at 583 (reiterating that our statutory construction proceeded "[a]bsent an ambiguity").

Remarkably, we even declined to consider then-existing Department of Labor regulations—as well as an amicus brief filed by the Secretary of Labor on Cumbie's behalf—precisely because "we conclude[d] that the meaning of the FLSA's tip credit provision is clear," and hence "we need not decide . . . what level of deference [the Department's interpretations] merit." *Id.* at 579 n.6. And, as if the substance of our holding were not already obvious beyond doubt, we cited a *Chevron* Step One decision to illustrate our reasoning. *Id.* (citing *Metro Leasing & Dev. Corp. v. Comm'r*, 376 F.3d 1015, 1027 n.10 (9th Cir. 2004) ("Because we conclude that [the] meaning of the statute is clear, we need not decide whether this regulation should be upheld.")).

*Cumbie*'s teaching is straightforward: § 203(m) simply does not protect an employee's tips *except* when his or her employer takes a tip credit. Hence, § 203(m) unambiguously establishes that, so far as the FLSA is concerned, employers who forgo the tip credit must be left free to institute tip pools comprising servers and line cooks, casino dealers and floor supervisors, or whatever other combination of employees the affected parties decide.

### III

It would take some mighty fancy footwork to get around *Cumbie*; if *Brand X* does not foreclose a contrary agency construction here, the doctrine is a dead letter. Indeed, in the panel majority's attempt to dance around *Cumbie* and its manifestly correct reading of § 203(m), it has stumbled off a constitutional precipice.

### A

The problems begin at the beginning. The majority acknowledges that "section 203(m) does not restrict the tip pooling practices of employers who do not take tip credits." *Or. Rest.*, 816 F.3d at 1084. That was the holding of *Cumbie*. As *Cumbie* explained, Congress wrote § 203(m) against the longstanding background norm that tip pooling is a matter of private contract. 596 F.3d at 579. Thus, given Congress's deliberate choice to subject one and only one class of employer to regulation—namely, employers who take a tip credit—the clear implication is that all other employers remain free to arrange their tip-pooling affairs without federal interference, just as they were before the statute was passed. And my colleagues say they have "no quarrel with *Cumbie*." *Or. Rest.*, 816 F.3d at 1090. So we all agree that Congress has chosen not to regulate the tip-pooling practices of employers like the ones we have here; we all agree that such conduct indisputably falls beyond the outer reaches of the FLSA. But then where does the panel majority think the Department of Labor gets authority to ban the very thing Congress has decided not to interfere with?

Here is where the panel majority's analysis goes wrong, and dangerously so. The majority claims to perceive a

"crucial distinction between statutory language that affirmatively protects or prohibits a practice and statutory language that is silent about that practice." *Or. Rest.*, 816 F.3d at 1087. From that premise, it concludes that the Department of Labor can ban these employers' tip pooling because § 203(m) does not "unambiguously and categorically *protect*" it; instead, the statute is simply "silent about that practice." *Id.* at 1086–87 (emphasis added). For that reason alone, the panel majority holds, the Department has a free hand to prohibit it. *Id.* As the majority says, any time a statute does not "unambiguously protect[] or prohibit[] certain conduct," the statute necessarily "leaves room for agency discretion" to regulate such conduct as it sees fit. *Id.* at 1088.

This is a caricature of *Chevron*. Indeed, the notion is entirely alien to our system of laws.[2]

In one sense, the panel majority is correct: § 203(m) is "silent" about whether employers who do not take a tip credit may require tip pooling, just like it is "silent" about whether I can require my law clerks to wear business attire in chambers. Section 203(m) does not "unambiguously and categorically protect" either practice. Does that mean the Department of Labor is free to prohibit them both? Of course not; obviously, the FLSA cannot serve as a source of

---

[2] *See, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952) ("The President's power, if any, to issue the order must stem either from an act of Congress or from the Constitution itself."). The point of *Youngstown* is that the Executive must always derive its authority to act either from an act of Congress or directly from the Constitution; *Youngstown* necessarily rejects the idea that the Executive may interfere with a given interest simply because Congress has not "unambiguously and categorically protected" it.

authority to prohibit activities it does not cover, just as a statute reading "No dogs in the park" cannot be said to authorize a Parks Department to ban birds as well. The reason is basic but fundamental, and it has nothing to do with any sort of free-floating nondelegation presumption. Rather, the point is that a statute's deliberate non-interference with a class of activity is not a "gap" in the statute at all; it simply marks the point where Congress decided to stop authorization to regulate. And while I do not question that Congress has given the Department "broad authority . . . to implement the FLSA," *Or. Rest.*, 816 F.3d at 1084, one does not "implement" a statute by expanding its domain to allow interference with conduct it consciously left alone. The Department is in reality legislating, yet that is a power the Constitution does not permit executive agencies to exercise.[3]

The problem here is that the majority has confused two very different types of statutory silence. Sometimes "[statutory] silence is meant to convey nothing more than a refusal to tie the agency's hands," meaning that Congress has given the agency discretion to choose between policy options

---

[3] As every novice learns, the official theory of the administrative state begins from the premise that "the lawmaking function belongs to Congress . . . and may not be conveyed to another branch or entity." *Loving v. United States*, 517 U.S. 748, 758 (1996). Agency rulemaking respects that constraint so long as it remains guided by an "intelligible principle" supplied by Congress. *E.g.*, *City of Arlington v. FCC*, 133 S. Ct. 1863, 1873 n.4 (2013). But the panel majority would effectively vaporize even that flimsy constraint by holding that an agency need not justify a given rule by tracing it to a valid statutory grant of authority; instead, it need only demonstrate that Congress has not affirmatively voiced opposition to the rule in question. The majority's vision makes a fear of "delegation running riot" look quaint by comparison, *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 553 (1935) (Cardozo, J., concurring), for it would dispense with even the pretense of delegation altogether.

Congress itself has placed on the table. *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 222 (2009). But "sometimes statutory silence, when viewed in context, is best interpreted as limiting agency discretion." *Id.* at 223. In other words, not all statutory silences are created equal. But you would never know that from the majority's opinion. The majority seems to think executive agencies have plenary power to regulate whatever they want, unless and until Congress affirmatively preempts them. With all due respect, that is a profoundly misguided understanding of administrative law.

An agency may not issue a given regulation unless it has a "textual commitment of authority" to do so. *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001). Indeed, it is axiomatic that "an agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Thus, it should go without saying that an agency "may not construe the statute in a way that completely nullifies textually applicable provisions meant to limit its discretion." *Am. Trucking*, 531 U.S. at 485. And "Congress knows to speak in plain terms when it wishes to circumscribe, and in capacious terms when it wishes to enlarge, agency discretion." *City of Arlington*, 133 S. Ct. at 1868.

Section 203(m) speaks in plain terms, not capacious ones. To illustrate the contrast, imagine a statute that said, simply, "Unfair tipping practices are prohibited. The Secretary may promulgate rules necessary to carry into execution the foregoing prohibition." Now *that* would be a capacious statute. I will stipulate that a reasonable person could read it to prohibit tip pooling even by employers who do not take a tip credit; on the other hand, a reasonable person could read it not to interfere with such practice. Our hypothetical statute

is "silent" in the relevant sense: in the sense that we might read it to cover the practice in question, but we are not compelled to read it that way, so the choice is for the agency to make.  But § 203(m) is nothing like that hypothetical statute.  It regulates tip pooling by one, and only one, specific class of employer: the employer who takes a tip credit.  Hence, as we put it in *Cumbie*, § 203(m) "does not restrict tip pooling when no tip credit is taken." 596 F.3d at 582.  There is no question, therefore, that § 203(m) stops short of regulating employers who do not take a tip credit.  The Department has no power to put words in Congress's mouth when Congress has deliberately chosen to stay quiet in the face of activity it knows is taking place.

Simply put, Congress intended to control, not to delegate, when employers may require tip pooling.  And there can be no question that the Department of Labor has no power to extend the statute beyond its stopping point.  As the Supreme Court has said time and again, "an administrative agency's power to regulate . . . must always be grounded in a valid grant of authority from Congress.  And '[i]n our anxiety to effectuate the congressional purpose . . . , we must take care not to extend the scope of the statute beyond the point where Congress indicated it would stop.'"  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (2000) (quoting *United States v. Article of Drug . . . Bacto-Unidisk . . .* , 394 U.S. 784, 800 (1969)).

Thus, as in *Brown & Williamson*, here "Congress has clearly precluded the [Department] from asserting jurisdiction to regulate" tip pooling by employers who do not take a tip credit.  *Id.* at 126.  "Such authority is inconsistent with the intent that Congress has expressed in the [FLSA's] overall regulatory scheme . . . .  In light of this clear intent, the

[Department's] assertion of jurisdiction is impermissible." *Id.* Because "the statutory text forecloses the agency's assertion of authority," its attempt to prohibit tip pooling by employers like the ones before us "is ultra vires." *City of Arlington*, 133 S. Ct. at 1871, 1869.

The majority's reasoning flies in the face of the above principles. To prop up its theory that an agency's power to regulate surges like an expansive body of water, covering everything until it bumps up against a wall erected by Congress, the majority relies on *Christensen v. Harris County*, 529 U.S. 576 (2000), and "Judge Souter's [sic] concurrence," *Or. Rest.*, 816 F.3d at 1088. But *Christensen* and Justice Souter's concurrence give absolutely no support to the majority's radical idea that an agency can regulate whatever it wants until Congress says out loud that it must stop. *Christensen* says only what everybody already knows: if a statute can reasonably be read either to permit or to prohibit a given practice, then the agency has discretion to choose which reading to enforce. 529 U.S. at 587–88; *id.* at 589 (Souter, J., concurring). But the whole question is whether a particular statute *can* be read either way. Sometimes the answer is yes; other times the answer is no, depending on the statute. In this case, *Cumbie* already said, correctly, that § 203(m) cannot be read either way—it subjects to regulation only employers who take a tip credit, and nobody else. 596 F.3d at 582. The Department has no power to enlarge the statute beyond the point where Congress decided to stop regulating. The Department, and my colleagues along with it, have yet to grasp that "an agency's power is no greater than that delegated to it by Congress." *Lyng v. Payne*, 476 U.S. 926, 937 (1986).

B

It should come as no surprise that our sister circuits have roundly and forcefully repudiated the specious theory of agency power our court now adopts. Those circuits have echoed again and again the basic reality that silence does not always constitute a gap an agency may fill, but often reflects Congress's decision not to regulate in a particular area at all, a decision that is binding on the agency.

As the D.C. Circuit has explained, "[w]ere courts to *presume* a delegation of power absent an express *withholding* of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well." *Ry. Labor Execs. Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 671 (D.C. Cir. 1994) (en banc) (as amended); *id.* at 659 ("[T]he Board would have us *presume* a delegation of power from Congress absent an express *withholding* of such power. This comes close to saying that the Board has the power to do whatever it pleases merely by virtue of its existence, a suggestion that we view to be incredible."); *id.* at 671 ("To suggest, as the Board effectively does, that *Chevron* step two is implicated any time a statute does not expressly *negate* the existence of a claimed administrative power (*i.e.* when the statute is not written in 'thou shalt not' terms), is both flatly unfaithful to the principles of administrative law . . . , and refuted by precedent."); *see also Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1174–75 (D.C. Cir. 2003) ("[T]he Postal Service's position seems to be that the disputed regulations are permissible because the statute does not expressly foreclose the construction advanced by the agency. We reject this position as entirely untenable under well-

established case law."); *Motion Picture Ass'n of Am., Inc. v. FCC*, 309 F.3d 796, 805 (D.C. Cir. 2002) (same).

Likewise, the Third Circuit has recognized that "[e]ven where a statute is 'silent' on the question at issue, such silence 'does not confer gap-filling power on an agency unless the question is in fact a gap—an ambiguity tied up with the provisions of the statute.'" *Coffelt v. Fawkes*, 765 F.3d 197, 202 (3d Cir. 2014) (quoting *Lin-Zheng v. Attorney Gen.*, 557 F.3d 147, 156 (3d Cir. 2009) (en banc)).

The Fourth Circuit, as well, has held that "[b]ecause we do not presume a delegation of power simply from the absence of an express withholding of power, we do not find that *Chevron*'s second step is implicated 'any time a statute does not expressly *negate* the existence of a claimed administrative power.'" *Chamber of Commerce v. NLRB*, 721 F.3d 152, 160 (4th Cir. 2013) (quoting *Am. Bar Ass'n v. FTC*, 430 F.3d 457, 468 (D.C. Cir. 2005)).

The Fifth Circuit agrees. *See Texas v. United States*, 809 F.3d 134, 186 (5th Cir. 2015) (as revised) ("The dissent repeatedly claims that congressional silence has conferred on DHS the power to act.  To the contrary, any such inaction cannot create such power." (citation omitted)).

Same for the Seventh Circuit:  "Courts 'will not presume a delegation of power based solely on the fact that there is not an express withholding of such power.'" *Sierra Club v. EPA,* 311 F.3d 853, 861 (7th Cir. 2002) (quoting *Am. Petroleum Inst. v. EPA*, 52 F.3d 1113, 1120 (D.C. Cir. 1995)).

The Eleventh Circuit piles on: "[I]f congressional silence is a sufficient basis upon which an agency may build a

rulemaking authority, the relationship between the executive and legislative branches would undergo a fundamental change and 'agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* . . . and quite likely with the Constitution as well.'" *Bayou Lawn & Landscape Servs. v. Sec'y of Labor*, 713 F.3d 1080, 1085 (11th Cir. 2013) (quoting *Ethyl Corp. v. EPA*, 51 F.3d 1053, 1060 (D.C. Cir. 1995)).

Notice what the panel majority has not produced: a citation to a single case endorsing the extravagant theory of executive lawmaking our court adopts today. Meaningful silence?

At any rate we, too, once knew all of this. In *Martinez v. Wells Fargo Home Mortgage, Inc.*, 598 F.3d 549, 554 n.5 (9th Cir. 2010), we were asked to defer to an agency's regulation of certain bank "overcharges" on the theory that the Real Estate Settlement Procedures Act did "not specifically address the situation at bar" and was therefore "sufficiently silent on the precise matter as to be ambiguous." Nonsense, we said; statutory "'silence' on the subject of overcharges does not mean that Congress's actions were ambiguous on that subject. Congress simply did not legislate at all on overcharges." *Id.* So, too, with tip pooling by employers who do not take a tip credit, or so I would have thought.

Oh well. Add *Martinez* to the heap of controlling authorities the panel majority has so casually tossed aside,

placing us, here as elsewhere, directly at odds with our colleagues in the rest of the country.[4]

## IV

## A

Even if this case were framed in terms of *Chevron* Step Two, it would not make any difference to the analysis or the outcome. Precisely because the Department has not been delegated authority to ban tip pooling by employers who forgo the tip credit, the Department's assertion of regulatory jurisdiction "is 'manifestly contrary to the statute,' and exceeds [its] statutory authority." *Sullivan v. Zebley*, 493 U.S. 521, 541 (1990) (quoting *Chevron*, 467 U.S. at 844).

My panel-majority colleagues prove the point themselves. Notwithstanding their conviction that the Department of Labor can regulate any private activity Congress has not "unambiguously and categorically protect[ed]" through positive law, they still undertake to reassure themselves that the Department's interpretation of § 203(m) is "reasonable." *Or. Rest.*, 816 F.3d at 1089. Yet their analysis on this score is so perfunctory that it only confirms they must really believe what they have repeatedly said, namely, that an agency does not need a discernible grant of regulatory power over a given subject matter before it can insert itself into the affairs of ordinary citizens.

---

[4] "Circuit split" perhaps does not fully describe the resulting state of affairs. It is more like we have spun out of the known legal universe and are now orbiting alone in some cold, dark corner of a far-off galaxy, where no one can hear the scream "separation of powers."

Unsurprisingly, the majority never mentions the text the Department is (purportedly) executing, not even once. Here is what the majority offers instead:

First, that it was reasonable for the Department of Labor to conclude "that, as written, [§] 203(m) contain[s] a 'loophole' that allow[s] employers to exploit FLSA tipping provisions." *Id.* Which quite obviously begs the question. But not only is it entirely question-begging, it unwittingly *concedes* that the statute "as written" limits the agency to regulating only those employers who take a tip credit. As explained above, an agency "may not construe the statute in a way that completely nullifies textually applicable provisions meant to limit its discretion," *Am. Trucking*, 532 U.S. at 485, for otherwise it would be exercising "the lawmaking function [which] belongs to Congress . . . and may not be conveyed to another branch or entity," *Loving*, 517 U.S. 758.

Second, the majority invokes the FLSA's legislative history, even though in *Cumbie* we explicitly refused to do so, explaining that "[o]f course, 'we do not resort to legislative history to cloud a statutory text that is clear.'" 596 F.3d at 581 n.11 (quoting *Ratzlaf*, 510 U.S. at 147–48). In any event, the primary source the majority quotes implicitly *disavows* the Department of Labor's interpretation. The very Senate Committee Report the majority relies on explains that an "employer will lose the benefit of [the tip credit] exception if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips." *Or. Rest.*, 816 F.3d at 1089 (quoting S. Rep. No. 93-690, at 43 (1974)). That statement makes sense only on the assumption that employers who forgo the tip credit *can* require tip pooling among customarily and non-customarily tipped employees, just as *Cumbie* had said. All the majority

can muster in response is a more general statement from the same report that § 203(m) "requir[es] . . . that all tips received be paid out to tipped employees." *Id.* at 1090. That's it. Even fans of legislative history should hold their noses before allowing one vague statement from one committee report to trump not only the clear text of the statute, *but also the express interpretation of that text as set out in the very same report.*

Third and finally, the majority says that "the FLSA is a broad and remedial act that Congress has frequently expanded and extended." *Id.* Here we have yet one more frank admission that the Department of Labor is "expand[ing] and extend[ing]," not "executing," the statute Congress enacted. But notice that even on the majority's telling, *Congress* is the one empowered to expand and extend the statute; the Department of Labor emphatically is not. And whatever the majority thinks "the purpose of the FLSA" happens to be, *id.*, the Supreme Court has told us that "the purpose of a statute includes not only what it sets out to change, but also what it resolves to leave alone," *W. Va. Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 98 (1991). In this case there is no doubt that Congress resolved to leave employers like the ones before us alone, at least as far as their tip-pooling practices are concerned. Neither we nor the Department have any power to "expand or extend" Congress's decision.

## B

Predictably enough, such shoddy reasoning has opened yet another circuit split on this precise issue. By defying *Cumbie* and rejecting its obviously correct reading of § 203(m), the majority has created another split with the

Fourth Circuit and has set us on a collision course with several others.

Most immediately, in *Trejo v. Ryman Hospitality Props., Inc.*, 795 F.3d 442 (4th Cir. 2015), the Fourth Circuit expressly agreed with *Cumbie* that "§ 203(m) 'does not state freestanding *requirements* pertaining to all tipped employees,' but rather creates rights and obligations for employers attempting to use tips as a credit against the minimum wage." *Id.* at 448 (quoting *Cumbie*, 596 F.3d 581). Accordingly, the Fourth Circuit held that "it is clear that th[e] language [of § 203(m)] could give rise to a cause of action only if the employer is using tips to satisfy its minimum wage requirements." *Id.* For the reasons explained above, that holding necessarily forecloses the Department's effort to ban tip pooling by employers who do not take a tip credit. *Brand X*, 545 U.S. at 984 ("[A] precedent holding a statute to be unambiguous forecloses a contrary agency construction.").

Looking beyond *Trejo*, the forecast is not encouraging for the panel majority here. In fact, "[r]elying on *Cumbie* and other cases, nearly every court that has considered the DOL Regulation has invalidated it under *Chevron*." *Malivuk v. Ameripark, LLC*, No. 1:15-CV-2570-WSD, 2016 WL 3999878, at *4 (N.D. Ga. July 26, 2016); *see, e.g., id.*; *Brueningsen v. Resort Express Inc.*, No. 2:12-CV-00843-DN, 2015 WL 339671, at *5 (D. Utah Jan. 26, 2015); *Mould v. NJG Food Serv. Inc.*, No. CIV. JKB-13-1305, 2014 WL 2768635, at *5 (D. Md. June 17, 2014); *Stephenson v. All Resort Coach, Inc.*, No. 2:12-CV-1097 TS, 2013 WL 4519781, at *8 (D. Utah Aug. 26, 2013); *see also Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 563 (S.D.N.Y. 2013) ("Because the Court is highly skeptical that DOL's regulations permissibly construe the statute, and

because it is undisputed that Pret paid its employees the minimum wage without taking into account the tip credit, the Court, in its discretion, declines to conditionally certify a class based on plaintiffs' tip-pooling claims.").

The only court in the land to misread *Cumbie* is our own!

V

Never let a statute get in the way of a tempting regulation. That, at any rate, seems to be the prevailing mood on our court. I cannot go along with such a breezy approach to the separation of powers, and I regret our decision to let stand the majority's catalog of errors. The majority ignores binding Supreme Court and circuit precedent, allows the Department of Labor to defy the clear and unambiguous limits on its discretion written into the Fair Labor Standards Act, and creates not one, but two circuit splits in the process. Amazingly, however, those might be the least offensive things about the panel majority's opinion.

More reckless is the unsupported and indefensible idea that federal agencies can regulate any class of activity that Congress has not "unambiguously and categorically protected" through positive law. Such notion is completely out of step with the most basic principles of administrative law, if not the rule of law itself.

I respectfully dissent.